## E. F. BROWN V. STATE.

### No. 2026. Decided November 20, 1912.

**1.—Private Bank—Illegal Deposit—Indictment—Owner—Agent.**

Where, upon trial of unlawfully receiving an illegal deposit by a private bank, the indictment failed to allege that the defendant was either the owner, agent or manager of said bank, and failed to allege the names of any owner of the bank, but simply alleged that the defendant was the president of said bank, and failed to allege that the owners of said bank were insolvent or in failing circumstances at the time the alleged money was received on deposit and that defendant knew these facts, the same was insufficient.

**2.—Same—Accomplice—Charge of Court.**

Where, upon trial of an illegal deposit in a private bank, the testimony revealed that one of the State's witnesses was an accomplice, and the court failed to submit a charge on accomplice testimony, there was reversible error.

**3.—Same—Charge of Court—Solvency.**

Upon trial of receiving an illegal deposit in a private bank, the court should have submitted a charge in regard to the question of solvency or insolvency by which the jury might have determined that question. Following Fleming v. State, 62 Texas Crim. Rep., 653.

**4.—Same—Evidence—Date of Offense.**

Where defendant was charged with having received an illegal deposit on a certain day, it was error in admitting testimony to show that deposits were made on a date long before the date alleged in the indictment.

Appeal from the District Court of Fayette. Tried below before the Hon. Frank S. Roberts.

Appeal from a conviction from unlawfully receiving an illegal bank deposit; penalty, five years' imprisonment in the penitentiary.

The opinion states the case.

*W. G. Love* and *John T. Duncan,* for appellant.—On the question that the statutes do not make the president of a private bank guilty of a violation thereof: Roby v. State, 41 Texas Crim. Rep., 152;

On question that owners composing private bank must be alleged: Narsets v. State, 32 S. W. Rep., 698; White v. State, 24 Texas Crim. App., 231; Thurmond v. State, 30 id., 538; Carder v. State, 35 Texas Crim. Rep., 105; Colter v. State, 40 id., 165; Crawford v. State, 40 id., 344.

On the court's failure to charge on insolvency: Roby v. State, 41 Texas Crim. Rep., 152; Frank v. Tatum, 87 Texas, 204; State v. Caldwell, 79 Iowa, 432; Smith v. Wallace, 41 S. W. Rep., 820; Meadowcroft v. People, 163 Ill., 66; State v. Beach, 43 N. E. Rep., 949.

On question of insufficiency of the evidence: Fleming v. State, 62 Texas Crim. Rep., 653; Welsh v. State, 3 Texas Crim. App., 413; Rountree v. State, 10 id., 110.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The charging part of the indictment is as follows: "That E. F. Brown, etc., did then and there

unlawfully receive and assent to the reception of a deposit of money into the bank of the Ellinger Banking Company, unincorporated, of Ellinger, Fayette County, Texas, the said E. F. Brown then and there being the President of said Ellinger Banking Company, and the said Ellinger Banking Company then and there being and was then and there insolvent and in failing circumstances, and the said E. F. Brown then and there knew and had knowledge of the fact that such bank and the owner and owners of said bank was and were insolvent and in failing circumstances. And the said E. F. Brown did then and there receive and assent to the receiving of a deposit of money in the sum of Fifty ($50) Dollars from and by Joe Hubenak, which said money was deposited to the open deposit account subject to check of the said Joe Hubenak in and upon the books of the Ellinger Banking Company as aforesaid, against the peace and dignity of the State.''

The first attack on the indictment is that it charges no offense against the laws of the State; second, that it fails to allege that the Ellinger Banking Company was a private bank or partnership and fails to allege the name or names of the owner or owners or persons composing said private bank or partnership; third, there is no allegation in said indictment that said defendant E. F. Brown was the owner of the said Ellinger Banking Company; fourth, it does not allege that the defendant was the agent of said Ellinger Banking Company; fifth, it fails to set out and allege that defendant was then and there the manager of said Banking Company; sixth, it does not allege that defendant, in receiving and assenting to the reception of a deposit of money in the sum of $50, was acting as agent, or manager, for the owner or owners of said Ellinger Banking Company; seventh, there is not only no allegation in said indictment as to who was the owner or owners of said Banking Company, but there is no direct allegation that said Banking Company had any owner or owners; eighth, there is no allegation in said indictment that said Banking Company had owners, naming them, and that said owners were then and there insolvent, whereas a private bank can only be insolvent by and through its owner or owners; ninth, there is no allegation to the effect that at the time said defendant received or assented to the reception of $50 in money, that he, defendant, knew or had knowledge that said bank was then and there insolvent.

Appellant was indicted under Article 532 of the Revised Penal Code. This statute was passed by the Twenty-fifth Legislature, found on page 130 of the Acts of that body, and is as follows:

''If any president, director, manager, cashier, or other officer of any banking institution, or the owner, agent, or manager of any private bank or banking institution, or the president, vice president, secretary, treasurer, director, or agent of any trust company or institution doing business in this state, shall receive or assent to the reception of any deposit of money or other valuable thing into such

bank or banking institution, or trust company or institution, or if any such officer, owner, or agent of such bank or banking institution, òr if any president, vice president, secretary, treasurer, director, or agent of such trust company or institution shall create or assent to the creation of any debt, debts, or indebtedness, in consideration of or by reason of which indebtedness any money or valuable property shall be received into such bank or banking institution, or trust company or institution after he shall have had knowledge of the fact that such bank, banking institution or trust company or institution, or the owner or owners of any such private bank, is insolvent or in failing circumstances, he shall be deemed guilty of a felony, and, upon conviction thereof, shall be punished by confinement in the penitentiary for a term of not less than two nor more than ten years; provided, that the failure of any such bank or banking institution, or trust company or institution, shall be prima facie evidence of knowledge on the part of any such officer or person that the same was insolvent or in failing circumstances when the money or property was received on deposit.''

Under this statute there are three characters of banking institutions, first, incorporated or chartered banks, second, private banks or banking institutions, and, third, trust companies or institution. Appellant was indicted under the second clause, that is, that clause of the statute which relates to private banking institution which denounces punishment against the owner, agent or manager of such private bank or private banking institution. However, the other two clauses of the statute would not refer to or include this indictment. It rests solely and alone upon the second clause which relates to private banks. Under the statutory provisions of that clause the punishment is denounced only against the owner, agent or manager of a private bank or banking institution. This indictment charges that appellant was the president of an ''unincorporated'' bank. It does not undertake to charge that it was an incorporated institution, but expressly excludes that idea; it also excludes the idea that it was a trust company. In fact, the whole record shows that it was, if any bank·at all, a private bank, and the indictment so charges it to be. In order to charge appellant with· an offense under that clause of the statute it was necessary to charge him as being owner, agent or manager of a private bank. This is the statutory requirement. It was by this means that the Legislature sought to hold responsible for criminal violation parties who committed fraud upon its depositors. This statute does not recognize the president of the institution as being responsible for receiving deposits. It was not charged that appellant was the agent or the manager of the institution, nor was he charged as being owner. It was said in Roby v. State, 41 Texas Crim. Rep., at page 152: ''This is an attempt at combining two clauses, the first and second, because that which relates to the private bank does not set forth a 'president' among those against whom the

punishment is denounced. In order to constitute a good indictment under the first class, it should have alleged that the Tyler Banking Company was a corporation; under the second, that it was a private bank or banking institution, and, if a private bank or partnership, the names of the owners or persons composing the partnership must be alleged. Wherever a partnership is sued, it is necessary to set out the names of the persons composing that partnership. Such has been the uniform ruling in Texas, since Bank v. Simonton, 2 Texas, 531. This rule is expressly recognized in the late decision of Frank v. Tatum, 87 Texas, 204. In this latter decision this language is used: 'The familiar rule that all partners who are jointly bound upon a copartnership contract must be joined as defendants in a suit upon it, is not affected by the foregoing articles of our statutes (referring to Articles 1224, 1346, Revised Civil Statutes). Partnerships are not thereby invested with any of the characteristics of corporations, nor are they expressly or impliedly authorized to sue or be sued in their firm names, independently of their members.' Such has been the ruling, as well, in criminal cases in this State, so far as we are aware. Nasets v. State, 32 S. W. Rep., 698; White v. State, 24 Texas Crim. App., 231; Thurmond v. State, 30 Texas Crim. App., 538; Carder v. State, 35 Texas Crim. Rep., 105; Colter v. State, 40 Texas Crim. Rep., 165; Crawford v. State, 40 Texas Crim. Rep., 344. The fact that the statute in question uses the expression 'private bank or banking institution' does not change this rule; nor does the fact that the 'Tyler Banking Company' did its business under the name of the 'Tyler Banking Company' make that mere name a legal entity; nor does it endow it with a personal existence distinct from or independent of the individuals who compose that banking company. In fact, it was simply a firm name, under which the individuals composing it did their banking business. If the individuals were solvent, the Tyler Banking Company was solvent; if they were insolvent, the Tyler Banking Company was insolvent; and, in order to have a good indictment under the peculiar wording of this statute, it was necessary to allege the names of the persons composing the Tyler Banking Company."

It will be noticed from an inspection of the indictment that it does not allege that appellant was either the owner, agent or manager, nor does it allege the names of any owner of the bank. The indictment evidently undertook to charge that the Ellinger Banking Company was a private bank. If this is not correct then the indictment charges nothing and is useless. It does not allege any of the facts which would constitute it an incorporated bank, but expressly alleges it to be "unincorporated," nor does it allege that it was a trust institution. Therefore, the conclusion is irresistible that it was intended to charge that the Ellinger Banking Company was a private bank. It will readily be perceived that a president of a private bank may not be one of the owners of the bank; he may not have a dollar's

interest in the bank. The statute does not hold him responsible as president for receiving money on deposit where the bank is insolvent or in failing circumstances. No such officer is mentioned in connection with private banks. In order to so hold him it must allege and prove that he was either the owner, the agent, or the manager. The indictment should have alleged that appellant was either the owner, agent, or manager, and in addition it should have alleged the owners of the bank; and further that these owners were insolvent or in failing circumstances at the time the money was received on deposit, and that the accused knew those facts. In a private bank all parties are partners and the bank could not be insolvent under the terms of this law unless the owners were insolvent. A different rule obtains in chartered institutions. Rules with reference to the responsibility of partners on one hand, and corporators of chartered institutions on the other are widely variant. In a partnership all parties are responsible for the debts of the concern, unless it be a limited partnership under the statute. The Ellinger Bank was not a limited partnership. The evidence is to the effect that there were several partners in this particular institution whose names are set out in the statement of facts. These should have been stated in the indictment, and the allegation made that these owners were insolvent or in failing circumstances at the time of the deposit, etc. As was said in the Roby case, supra: "If the individuals were solvent, the Tyler Banking Company was solvent; if they were insolvent, the Tyler Banking Company was insolvent; and, in order to have a good indictment under the peculiar wording of this statute, it was necessary to allege the names of the persons composing the Tyler Banking Company." These names, as shown by the statement of facts, were readily ascertainable. The manager of the concern, Mr. Broesche, mentions the names of these partners in his testimony. There is nothing to indicate in the indictment that the grand jury did not know the names of the owners, nor does it charge that they used any diligence to ascertain the names of these parties, or that they were unknown to that body.

We have disposed of this indictment in a general way without going more specifically into a review of the many grounds urged against its validity. It is clearly not in accordance with the statute and does not charge the offense therein denounced. The indictment should have been quashed and the judgment arrested, as urged by appellant.

There are several other grounds urged for reversal of the judgment, which we think are well taken. One of these will be noticed. Mr. Broesche was used as a witness. His testimony, as does the testimony of all the witnesses, shows beyond question that he was the manager of the Ellinger Banking Company; that he attended to its business matters and had personal direction and charge. He received all the money and paid all checks, and in fact had personal super-

vision of the concern. Appellant was not at Ellinger and had not been for three years. He lived in Houston, Harris County. Another one of the partners in the concern, Mr. N. K. Freeman, lived at another and different point. The residences of the other partners in the concern are not stated, but there were several of those. The evidence of Mr. Broesche further demonstrates that he knew the business and was intimate with it, and if it was insolvent or in failing circumstances at the time of receiving the deposit, no one knew that better than Mr. Broesche. Its indebtedness, under his statement, was something in the neighborhood of twenty-five thousand dollars at the time of the reception of this money, and it had something like thirteen hundred dollars in cash on hand. In fact, his testimony indicates that the concern was anything but a solvent one. Under these circumstances, we are of opinion that appellant was correct in his contention that the court should have charged that Mr. Broesche was an accomplice and appropriately given the law in regard to this question to the jury.

There is another question it may be well enough to notice. The court failed to give the jury any rule in regard to the question of solvency by which they might determine that question. The jury were not informed when a banking institution was insolvent or in failing circumstances. This question is urged in various ways in the trial court. This court, in Fleming v. State, 62 Texas Crim. Rep., 653, laid down the rule that should govern the trial courts in charging this phase of the law.

There are other questions in regard to the admission and rejection of testimony which we think are well taken, but not necessary to be discussed. But one phase of these matters will be noticed. Several witnesses were permitted to testify that on Saturday, before the bank closed its doors on the following Tuesday, over appellant's objection, that they had made deposits in this bank. Appellant is charged with having received the deposits set out in the indictment on Monday following the Saturday in question. Upon another trial we are of opinion the evidence of the deposits received on Saturday should not be received or permitted to go to the jury. It could shed no light upon the question, had no tendency to show that the bank was insolvent or in failing circumstances, and did not undertake to connect the defendant with this in any manner, for the evidence shows positively he was not there and had not been for three years, and Mr. Broesche was not on trial, and so far as the record is concerned, seems not to have been indicted. He and not appellant received the deposits and entered them to the general account.

Without going further into a discussion of the questions set out for reversal, we dispose of the case as above indicated, and for the reasons stated the judgment will be reversed, and because the indictment is insufficient, the prosecution will be dismissed.

*Reversed and dismissed.*